# 17-424-cv

IN THE

# United States Court of Appeals
# for the Second Circuit

———————

ESTHER KIOBEL, by her attorney-in-fact, CHANNA SAMKALDEN,

*Petitioner-Appellee*,

v.

CRAVATH, SWAINE & MOORE, LLP,

*Respondent-Appellant*.

———————

On Appeal from the United States District Court
for the Southern District of New York, No. 16 Civ. 7992 (AKH)
District Judge Alvin K. Hellerstein

———————

**BRIEF FOR RESPONDENT-APPELLANT
CRAVATH, SWAINE & MOORE LLP**

———————

LAUREN A. MOSKOWITZ
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

NEAL KUMAR KATYAL
JESSICA L. ELLSWORTH
SEAN MAROTTA
EUGENE A. SOKOLOFF
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

*Counsel for Respondent-Appellant*

April 13, 2017

## CORPORATE DISCLOSURE STATEMENT

Respondent-Appellant Cravath, Swaine & Moore LLP is a New York limited liability partnership.  No publicly held corporation owns ten percent or more of any class of equity of Cravath.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

JURISDICTIONAL STATEMENT ..........................................................1

INTRODUCTION .......................................................................2

ISSUES PRESENTED...................................................................5

STATEMENT OF THE CASE............................................................6

    A.    Statutory Background...................................................6

    B.    Background ............................................................7

    C.    Procedural History ...................................................9

    D.    The Decision Below...................................................12

STANDARD OF REVIEW .............................................................16

SUMMARY OF ARGUMENT ........................................................16

ARGUMENT ...........................................................................20

I.    SECTION 1782 DOES NOT AUTHORIZE DISCOVERY
    OF SHELL'S DOCUMENTS FROM CRAVATH .................................20

    A.    Section 1782 Discovery Is Subject To Established
        Limits On Federal Courts' Power To Compel
        Production ............................................................21

    B.    A Court Cannot Order A Law Firm To Produce Client
        Documents That Would Fall Beyond The Statutory
        Reach Of A Subpoena If The Client Had Retained
        Them....................................................................23

    C.    A Court Cannot Compel A Law Firm To Produce A
        Client's Documents Where The Client Is Not Subject
        To Personal Jurisdiction.............................................33

ii

## TABLE OF CONTENTS—Continued

Page

II.   THE DISTRICT COURT ABUSED ITS DISCRETION IN
      GRANTING KIOBEL'S PETITION ........................................................39

      A.   The District Court Misconstrued *Intel*'s First Factor....................40

      B.   The District Court Gave No Weight To Dutch
           Discovery Rules Or The Netherlands' Opposition In
           *Kiobel* ...........................................................................................45

      C.   The District Court Should Not Have Ignored Kiobel's
           End-Run Around The Original Confidentiality Orders
           Or Dismissed Cravath's Confidentiality Concerns........................49

CONCLUSION .......................................................................................................55

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

CASES:

*Andover Healthcare, Inc. v. 3M Co.*,
   817 F.3d 621 (8th Cir. 2016) ....................................................................50, 54

*Application of Sarrio, S.A.*,
   119 F.3d 143 (2d Cir. 1997) ....................................................................*passim*

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
   501 U.S. 104 (1991)...........................................................................................22

*AT & T Corp. v. Sprint Corp.*,
   407 F.3d 560 (2d Cir. 2005) ...........................................................................52

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) .................................................................................6

*Burger v. Brookhaven Med. Arts Bldg., Inc.*,
   131 A.D.2d 622 (N.Y. App. Div. 2d Dep't 1987).............................................36

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015) .............................................................................16

*Chevron Corp. v. Berlinger*,
   629 F.3d 297 (2d Cir. 2011) ...............................................................................1

*Colton v. United States*,
   306 F.2d 633 (2d Cir. 1962) .....................................................................24, 26

*Commisioner v. Banks*,
   543 U.S. 426 (2005)...........................................................................................36

*Daimler A.G. v. Bauman*,
   134 S. Ct. 746 (2014).................................................................................*passim*

*Durkee v. Leland*,
   4 Vt. 612 (1832).................................................................................................23

*Dynegy Midstream Servs., LP v. Trammochem*,
   451 F.3d 89 (2d Cir. 2006) .........................................................................22, 36

## TABLE OF AUTHORITIES—Continued

<u>Page</u>

*Estate of Ungar v. Palestinian Auth.*,
   412 F. Supp. 2d 328 (S.D.N.Y. 2006) ...................................34, 35, 36

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) .......................................................46, 49

*Exp.-Imp. Bank of the Republic of China v. Grenada*,
   768 F.3d 75 (2d Cir. 2014) ...............................................................30

*Fisher v. United States*,
   425 U.S. 391 (1976)...................................................17, 23, 24, 26

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..........................................................................37

*Gruss v. Zwirn*,
   296 F.R.D. 224 (S.D.N.Y. 2013) .....................................................43

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014) .......................................................36, 37

*Havlish v. Royal Dutch Shell PLC*,
   No. 13 Civ. 7074 (GBD), 2014 WL 4828654 (S.D.N.Y. Sept. 24, 2014) ........37

*Huang v. I.N.S.*,
   436 F.3d 89 (2d Cir. 2006) .........................................................39, 48

*Hunt v. Blackburn*,
   128 U.S. 464 (1888)..........................................................................24

*In re Adelphia Recovery Trust*,
   634 F.3d 678 (2d Cir. 2011) .............................................................51

*In re Application for an Order Pursuant to 28 U.S.C. § 1782*,
   773 F.3d 456 (2d Cir. 2014) .............................................................32

*In re Application of Gianoli Aldunate*,
   3 F.3d 54 (2d Cir. 1993) ...................................................................49

## TABLE OF AUTHORITIES—Continued

Page

*In re Application of Gorsoan Ltd. & Gazprombank OJSC v. Bullock*,
  652 F. App'x 7 (2d Cir. 2016) ..............................................................45

*In re Application of OOO Promnefstroy*,
  No. M 19-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009)...................44

*In re Application of Schmitz*,
  259 F. Supp. 2d 294 (S.D.N.Y. 2003) ...............................................27

*In re Application of Thai-Lao Lignite (Thailand) Co.*,
  821 F. Supp. 2d 289 (D.D.C. 2011)...................................................40

*In re Bank of Cyprus Pub. Co.*,
  No. 10 Misc. 23, 2011 WL 223168 (S.D.N.Y. Jan. 21, 2011) .........................44

*In re Catalyst Managerial Servs., DMCC*,
  __ F. App'x __, 2017 WL 716846 (2d Cir. Feb. 23, 2017)...............................45

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  Nos. 07-5944 SC, CV-12 80 151 MISC, 2012 WL 6878989
  (N.D. Cal. Oct. 22, 2012)..............................................................54

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002) ...........................................................16

*In re Godfrey*,
  526 F. Supp. 2d 417 (S.D.N.Y. 2007) ............................................26, 39

*In re Marc Rich & Co., A.G.*,
  707 F.2d 663 (2d Cir. 1983) .....................................................*passim*

*In re Republic of Kazakhstan*,
  110 F. Supp. 3d 512 (S.D.N.Y. 2015) ...............................................32

*In re Sealed Case*,
  832 F.2d 1268 (D.C. Cir. 1987), *abrogated on other grounds by
  Braswell v. United States*, 487 U.S. 99 (1988)............................*passim*

*In re Sims*,
  534 F.3d 117 (2d Cir. 2008) ...........................................16, 44, 50, 52

## TABLE OF AUTHORITIES—Continued

<u>Page</u>

*In re Teligent, Inc.*,
  640 F.3d 53 (2d Cir. 2011) ..................................................51

*In re Warrant to Search a Certain E–Mail Account Controlled &*
  *Maintained by Microsoft Corp.*,
  829 F.3d 197 (2d Cir. 2016) .................................................35

*In re Woolworth Corp. Sec. Class Action Litig.*,
  166 F.R.D. 311 (S.D.N.Y. 1996) ..........................................44

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)...................................................*passim*

*Johnson v. Riverhead Cent. Sch. Dist.*,
  No. CV14-7130 (DRH) (AKT), 2016 WL 4507002
  (E.D.N.Y. Aug. 26, 2016)....................................................43

*Kiobel v. Royal Dutch Petroleum Co.*,
  621 F.3d 111 (2d Cir. 2010) .................................................29

*Kiobel v. Royal Dutch Petroleum Co.*,
  133 S. Ct. 1659 (2013)................................................*passim*

*Lynde v. Judd*,
  3 Day 499 (Conn. 1807) ......................................................23

*Martindell v. Int'l Tel. & Tel. Corp.*,
  594 F.2d 291 (2d Cir. 1979) .................................................52

*McPherson v. Rathbone*,
  7 Wend. 216 (N.Y. Sup. Ct. 1831) ......................................23

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ....................................46, 47, 49

*M.L.C., Inc. v. N. Am. Philips Corp.*,
  109 F.R.D. 134 (S.D.N.Y. 1986) ..........................................44

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009)............................................................31

## TABLE OF AUTHORITIES—Continued

Page

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010)..................................................................30

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
  484 U.S. 97 (1987)....................................................................22

*Perkins v. Benguet Consol. Mining Co.*,
  342 U.S. 437 (1952)..................................................................37

*Ratliff v. Davis Polk & Wardwell*,
  354 F.3d 165 (2d Cir. 2003) ...................................................*passim*

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ......................................................21

*Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*,
  689 N.E.2d 879 (N.Y. 1997)......................................................43

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
  376 F.3d 79 (2d Cir. 2004) ................................................19, 28, 41, 48

*SEC v. TheStreet.com*,
  273 F.3d 222 (2d Cir. 2001) .................................................20, 51, 52

*Tyszka v. Make & Take Holding, LLC*,
  72 A.D.3d 1620 (N.Y. App. Div. 4th Dep't 2010)............................36

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950)..................................................................21

*United States v. Nixon*,
  418 U.S. 683 (1974)..................................................................21

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)..................................................................24

*U.S. Philips Corp. v. Iwasaki Elec. Co.*,
  142 F. App'x 516 (2d Cir. Aug. 9, 2005) ...................................28, 38

# TABLE OF AUTHORITIES—Continued

Page

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ............................................................37

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000) ............................................................29

**STATUTES**:

28 U.S.C. § 1291 ............................................................................2

28 U.S.C. § 1331 ............................................................................1

28 U.S.C. § 1350 ............................................................................8

28 U.S.C. § 1782 ......................................................................*passim*

28 U.S.C. § 1782(a) ..................................................................*passim*

28 U.S.C. § 1783 ..........................................................................35

**RULES**:

Fed. R. Civ. P. 45 ..........................................................................25

Fed. R. Evid. 502(d) ......................................................................29

Fed. R. Evid. 502(e) ......................................................................30

**LEGISLATIVE MATERIAL:**

H.R. Rep. No. 88-1052 (1963) ......................................................22

S. Rep. No. 88-1580 (1964) ..........................................................22

**OTHER AUTHORITIES:**

8 J. Wigmore, *Evidence* § 2307 (McNaughton rev. 1961) ........17, 23, 24

*Black's Law Dictionary* (10th ed. 2014) ........................................42

*Restatement (Third) of the Law Governing Lawyers* § 46(2)
  (Am. Law Inst. 2000) ................................................................43

# TABLE OF AUTHORITIES—Continued

Page

Hans Smit, *American Assistance To Litigation In Foreign And International Tribunals: Section 1782 Of Title 28 Of The U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1 (1998)............................................39

Charles Alan Wright et al., 8A *Federal Practice & Procedure* § 2044.1 (3d ed.) ...................................................................................52

Charles Alan Wright et al., 8B *Federal Practice & Procedure* § 2210 (3d ed.) .....................................................................................43

IN THE

# United States Court of Appeals for the Second Circuit

————————

No. 17-424-cv

————————

ESTHER KIOBEL, by her attorney-in-fact, CHANNA SAMKALDEN,

*Petitioner-Appellee,*

v.

CRAVATH, SWAINE & MOORE, LLP,

*Respondent-Appellant.*

————————

On Appeal from the United States District Court
for the Southern District of New York, No. 16 Civ. 7992 (AKH)
District Judge Alvin K. Hellerstein

————————

**BRIEF FOR RESPONDENT-APPELLANT
CRAVATH, SWAINE & MOORE LLP**

————————

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331. On January 24, 2017, the court entered an order granting Petitioner-Appellee Esther Kiobel's ("Kiobel") petition for leave to issue a subpoena to Respondent-Appellant Cravath, Swaine & Moore LLP ("Cravath") for the production of documents pursuant to 28 U.S.C. § 1782, and ordering Cravath to produce all responsive documents. A290.

Cravath noticed a timely appeal on February 13, 2017. A291. This Court has jurisdiction under 28 U.S.C. § 1291. *See Chevron Corp. v. Berlinger*, 629 F.3d

297, 306 (2d Cir. 2011) (an order granting a Section 1782 petition is an appealable final order).

## INTRODUCTION

28 U.S.C. § 1782 makes American discovery processes available to litigants gathering evidence for use in a foreign proceeding. The statute permits a federal court to order a respondent that resides or is found in its judicial district to produce documents or testimony. In this way, Section 1782 serves important comity interests: In appropriate cases, it authorizes U.S. courts to order discovery for use in overseas proceedings in the expectation that other countries will reciprocate.

Kiobel's Section 1782 petition, granted by the District Court below, subverts these purposes. Fifteen years ago, Kiobel sued several foreign entities—residents of the Netherlands, Britain, and Nigeria referred to collectively as Shell—in the Southern District of New York, asserting claims under the Alien Tort Statute. Shell retained Cravath to defend it and challenged the Southern District's jurisdiction. Eventually, Shell prevailed; the Supreme Court held that U.S. courts lacked subject-matter jurisdiction over Kiobel's claims. *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1662-63 (2013). But not before Kiobel sought and obtained over 100,000 pages of discovery from Shell. Shell produced that material to Kiobel and her co-plaintiffs through Cravath and in reliance on a prior and explicit stipulated confidentiality order to which Kiobel was a party.

Some three-and-a-half-years after the Supreme Court's decision, Kiobel decided that she wanted to use Shell's confidential documents in a new suit against the *Kiobel* defendants, this time in the Netherlands. But the confidentiality order posed a problem. It barred Kiobel from using those materials in any other forum— including the Dutch courts. So Kiobel came up with a work-around: Subpoena the same materials under Section 1782.

That stratagem had problems of its own, however. Section 1782 requires that the person from whom discovery is sought reside or be found in the judicial district. Shell—whose documents Kiobel sought—obviously did not reside in Manhattan or anywhere in the United States, for that matter. So Kiobel came up with a work-around for that, too: Instead of subpoenaing Shell, she would subpoena Shell's attorneys at Cravath. The District Court blessed that gambit and ordered Cravath to turn over Shell's documents.

This Court should not allow litigants to circumvent Section 1782's jurisdictional limitations so easily. Under longstanding precedent, documents that are beyond a court's subpoena power in a client's hands retain their protection from judicial process when they are transferred to an attorney for purposes of obtaining legal advice. That precedent applies to Section 1782 just as it does to any other method of discovery. And it is fatal to Kiobel's petition: Because Shell

3

is not within the District Court's subpoena power, its documents cannot be compelled from its attorney, Cravath.

That statutory limitation is reinforced here by due-process principles. A court cannot enforce a subpoena against a party that is not subject to its personal jurisdiction. Nor can it evade that rule by exercising jurisdiction over the party's agent, officer, or representative. With no basis to assert jurisdiction over Shell, the District Court could not order Shell's agent—Cravath—to turn over documents that Cravath holds on Shell's behalf.

Even assuming, moreover, that the District Court *could* have ordered Cravath to produce Shell's documents, it abused its discretion in doing so. Under this Court's case law, district courts should decline to render Section 1782 assistance when: (1) the petition seeks discovery from a party the petitioner intends to sue and asserts is subject to the foreign tribunal's jurisdiction, (2) use of the discovery is opposed by the country where it will be used, (3) the petition constitutes an attempt to circumvent a foreign country's stricter discovery rules, or (4) the petition unduly threatens the confidentiality of the demanded materials. Kiobel's petition checks all four boxes. It is squarely aimed at Shell, which Kiobel's Dutch counsel contends will be the defendant in the Dutch-court proceedings that she intends to file. It is the sort of discovery the Dutch government opposed when it filed a brief urging the Supreme Court to hold that

4

U.S. courts lacked jurisdiction over Alien Tort Statute suits like Kiobel's. It is—
by Kiobel's attorney's own admission—an attempt to procure documents that
might not be available through Dutch procedures. And it breaches the
confidentiality order protecting Shell's documents in the earlier American
litigation without Shell's consent or even its participation.

Far from encouraging foreign courts to cooperate with American discovery
requests, the District Court's decision confirms foreign countries'—and foreign
companies'—worst fears about American discovery run amok. The Court should
reverse.

## ISSUES PRESENTED

1.    Whether Section 1782 allows a district court to command production
of documents belonging to a company beyond its subpoena power from that
company's local counsel, where the company transferred the documents to counsel
for purposes of obtaining legal advice in responding to discovery requests
propounded in a case over which the court lacked jurisdiction.

2.    Whether the District Court abused its discretion in granting Kiobel's
Section 1782 petition where Shell will be named as the defendant in Kiobel's
contemplated Dutch lawsuit, the Netherlands has objected to the broader discovery
allowed in U.S. courts, the documents requested may not be available under Dutch

discovery law, and Kiobel's petition is an attempt to circumvent a confidentiality order to which she previously agreed.

## STATEMENT OF THE CASE

### A.    Statutory Background.

Congress enacted Section 1782 to make it easier for foreign litigants and tribunals to make use of U.S. courts' authority to order discovery. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247-48 (2004); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). The statute provides in pertinent part that "[t]he district court of the district in which a person resides or is found may order him to . . . produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). The district court may not, however, compel production of "a document or other thing in violation of any legally applicable privilege." *Id.*

This Court has read that language to impose three prerequisites to discovery: that "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn*, 673 F.3d at 80.

6

Once a petitioner has satisfied these elements, a court is permitted—though not required—to grant discovery. *Intel*, 542 U.S. at 264. The Supreme Court has instructed district courts exercising their discretion to consider the four so-called *Intel* factors, which are (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

## B.  Background.

In 2002, Esther Kiobel and eleven other Nigerian plaintiffs sued Royal Dutch Petroleum Company and Shell Transport and Trading Company p.l.c.— Dutch and British holding companies, respectively—and their joint subsidiary, Shell Petroleum Development Company of Nigeria, Ltd., in the Southern District of New York. *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1662-63 (2013). Kiobel alleged that these entities, referred to collectively as Shell, were complicit in human-rights abuses in Nigeria during the 1990s. *Id.* Kiobel's complaint purported to invoke the district court's jurisdiction under the Alien Tort

Statute, which grants federal courts the power to hear "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

The district court consolidated Kiobel's case with three other substantively identical Alien Tort Statute cases—known as the *Wiwa* cases—for pre-trial discovery. A119-20 (¶¶ 2-3). In the course of that discovery, Shell produced over 100,000 pages of documents through Cravath, its counsel. A11 (¶ 4); A120 (¶ 3).

Most of the documents Shell produced were marked "confidential" in accordance with a stipulated confidentiality order entered by the district court in *Wiwa* and joined by the parties to *Kiobel*. A120 (¶ 3). Under the order, documents marked "confidential" were to be used "solely for purposes" of *Kiobel* and *Wiwa* and could be disclosed only according to the terms of the order. A58-59, A74-75 (¶¶ 7-9). The order further provided that the parties would destroy or return confidential material no later than thirty days after the cases' conclusion, and that the order would survive the end of the litigation. A63-64, A79-80 (¶¶ 20-21). Any de-designation of confidential documents or modification of the confidentiality order could only be agreed to by the parties or ordered by the district court. A63-65, A79-81 (¶¶ 18-19, 21, 23). Cravath attorneys signed the confidentiality orders in their capacity as Shell's counsel. A65, A81.

8

After consolidation, *Kiobel* and *Wiwa* took different courses. The district court dismissed certain of Kiobel's Alien Tort Statute claims for lack of subject-matter jurisdiction, but certified its order for interlocutory review. *Kiobel*, 133 S. Ct. at 1663. This Court, in turn, held that Kiobel's complaint should be dismissed in full for lack of subject-matter jurisdiction, and the Supreme Court affirmed that ruling. *Id.* at 1663, 1669. The Supreme Court held that the presumption against extraterritoriality applies to the Alien Tort Statute and that it barred Kiobel's suit "seeking relief for violations of the law of nations occurring outside the United States." *Id.* at 1669. In Kiobel's case, the Court explained, "all the relevant conduct took place outside the United States." *Id.*; *see id.* at 1662 (noting that the defendant entities are "holding companies incorporated in the Netherlands and England" and their joint subsidiary "incorporated in Nigeria"). While Kiobel's case was winding its way through the courts, the *Wiwa* actions settled in 2009. A11 (¶ 1).

### C. Procedural History.

On October 18, 2016—over three-and-a-half years after the Supreme Court's decision and more than two decades after the alleged human-rights abuses underlying her original complaint—Kiobel filed a petition under 28 U.S.C. § 1782 seeking leave to serve a subpoena on Cravath. A6. Kiobel's petition alleged that she intended to sue Shell again, this time in the Netherlands. In a declaration

9

attached to the petition, Kiobel's Dutch attorney explained that the Dutch suit would be "substantively similar to the American *Kiobel* and *Wiwa* cases." A85 (¶ 4). To file that suit, Kiobel claimed she needed "information that was previously produced by Cravath's clients"—that is, Shell—"in [the] prior litigation." A6. But Kiobel's petition did not seek to serve a subpoena on Shell. Instead, it sought the documents from Shell's attorneys at Cravath, who had obtained them for litigation purposes.

The proposed subpoena attached to the petition requested "[a]ll deposition transcripts from *Kiobel* and the *Wiwa* cases" and "[a]ll discovery documents and communications produced to the plaintiffs by Shell and other defendants in *Kiobel* and the *Wiwa* cases," even where the material had been designated confidential. A10.[1] Kiobel, in other words, sought documents from Cravath that the law firm held solely in its capacity as Shell's attorney and in connection with its provision of legal counsel to Shell during the *Kiobel* and *Wiwa* cases. And Kiobel sought them "for use in contemplated proceedings in the Netherlands to which [Kiobel] will be a party," A6—a use she had disclaimed in the confidentiality stipulation she executed with Shell in 2002. *See* A58 (¶ 7).

---

[1]     Kiobel initially sought all of the *Kiobel* and *Wiwa* discovery material, whether designated confidential or not. A10. She later narrowed her request to just the confidential materials. Petitioner's Reply Memorandum of Law, Dkt. No. 10, at 3.

Kiobel was vague as to when, exactly, the new suit would be filed or what she had been doing in the three-and-a-half years since the Supreme Court's decision in *Kiobel* came down. Her Dutch attorney claimed to be "in the process of completing [her] assessment of the available documents and collecting the necessary evidence to file the lawsuit" and asserted that she "expect[ed] to bring the lawsuit by the end of" 2016. A86 (¶ 5).

Kiobel was also circumspect about whether she could use Dutch procedures to obtain the documents from Shell directly. Her Dutch attorney claimed, on one hand, that the Netherlands does not offer pretrial discovery, meaning that she "must complete the greater part of the investigation and collection of evidence" before commencing suit. A86 (¶ 6). On the other, she admitted that Dutch law "allows for the submittal of additional evidence once the lawsuit is pending" and that it is possible to obtain documents through an "exhibition request." *Id.* The attorney stated that she did not wish to pursue that process because it is "time-consuming and intricate" and "the pertinent evidence is already available in the United States." *Id.*

Cravath opposed Kiobel's petition. Among other things, it argued that because the documents Kiobel sought belonged to Shell and because Cravath held them solely in its capacity as Shell's attorney, *Shell* was the "true party" from which Kiobel sought discovery. Because Kiobel had not shown that Shell is

11

"found" in the Southern District, Cravath argued that Section 1782 did not authorize discovery.

Cravath also explained that, even if Kiobel could meet Section 1782's statutory prerequisites, the District Court should exercise its discretion to deny the petition. The petition was effectively aimed at Shell, which is the intended defendant in Kiobel's Dutch suit and which Kiobel's Dutch counsel contends is within the jurisdictional reach of the Dutch courts; the petition was an end-run around the Netherlands' more-limited discovery procedures; and it would allow foreign use of material Shell produced in reliance on the *Kiobel* and *Wiwa* confidentiality orders without Shell's consent or even its participation.

In reply, Kiobel submitted a new declaration from her Dutch attorney, offering additional details on Dutch law. According to the new declaration, the Dutch Code of Civil Procedure allows parties familiar with the substance of evidence in another party's hands to seek pre-trial discovery. A195-96 (¶ 7). Indeed, Kiobel's Dutch attorney explained that she had recently obtained discovery *from Shell* in another case using such a request. A196 (¶ 9).

### D. The Decision Below.

The District Court heard argument on the petition. In the course of that argument, the District Court expressed the view that it could avoid violating the *Kiobel* and *Wiwa* confidentiality orders by requiring Kiobel to give Cravath "a

solemn representation by anyone seeing these documents that they are not going to use them for publicity" and that the documents "are going to be used only for drafting court papers and for use in proceedings after that." A220-21. The court concluded the hearing by "holding that, subject to working out an application of the old protective order to the new situation," the documents could "be subpoenaed for use in the foreign proceeding." A234.

Although Cravath had told the District Court that Cravath itself had no authority to de-designate documents covered by the protective order governing discovery materials from the *Kiobel* and *Wiwa* cases—only the parties or the court could do that—it complied with the court's directive to execute a new confidentiality stipulation with Kiobel. A236-44. Because Shell—the party with whom Kiobel had agreed to the original confidentiality order—was not before the court, Cravath signed the stipulation on its own behalf as respondent. A244. The stipulation expressly reserved Cravath's objections to Kiobel's petition and any resulting order to produce documents. A243.

The substance of the stipulation largely tracked the prior confidentiality orders. A236-75. But there were two key differences. First, because Shell was not a party, the new confidentially stipulation did not give Shell any right to enforce it. *See* A242-43 (¶¶ 18-22). And second, because the District Court has no authority over the Dutch proceedings or courts, the stipulation could only direct

13

Kiobel to "request" confidential treatment for any documents she used in a Dutch lawsuit. *See* A241 (¶ 14).

The District Court so-ordered the stipulation and issued a written opinion granting Kiobel's petition and ordering Cravath to produce all Shell documents in its possession responsive to her subpoena. A244, A290. The District Court rejected Cravath's statutory arguments against granting the petition. It held that "[t]he question is whether Cravath is in possession of the documents, not whom the documents 'belong' to." A279. Because the documents were in Cravath's possession and Cravath is headquartered in the Southern District, the court believed the statute authorized discovery, "notwithstanding Cravath's attorney-client relationship with Shell." A280.

The District Court also found that the discretionary factors weighed in favor of granting the petition. The court acknowledged the many decisions finding that *Intel*'s first factor weighs against production when a Section 1782 petition seeks a party's documents from its law firm. A283. But the District Court thought it more important that the documents at issue be "within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." A284 (citation omitted). And it believed that the materials Kiobel sought were not within the Dutch court's reach for two reasons. A284-85. First, it concluded that if Kiobel could not include the evidence she sought through Section 1782 in her initial

14

pleadings, her "contemplated action may be foreclosed before there is any opportunity to obtain this discovery from directly from Shell in the Dutch proceeding." A284. Second, the District Court thought that Shell might not possess all of the requested documents, either because they had not been produced from Shell's files originally or because Shell might not still hold copies years after the fact. A284-85.

As to the second and third *Intel* factors, the District Court held that Cravath had not shown that Dutch courts would be unreceptive to evidence obtained through Section 1782 and that Kiobel's petition was not an attempt to circumvent Dutch proof-gathering restrictions. A285-88. The court acknowledged that the Dutch government had filed an amicus brief in *Kiobel* urging the Court to limit Alien Tort Statute suits in part because of the burdens of American discovery. A286. But the District Court noted that the amicus brief had not discussed Section 1782 discovery or stated whether Dutch courts accept evidence gathered under foreign procedures. *Id.* And it rejected as irrelevant Cravath's argument that Kiobel's petition sought to avoid the Netherlands' more-restrictive discovery procedures. A287-88.

Finally, the District Court dismissed Cravath's confidentiality concerns as "moot" because "the parties"—though not Shell—had "stipulated to a confidentiality agreement." A289.

15

Having found Section 1782's statutory requirements satisfied and that all discretionary factors weighed in favor of granting the petition, the District Court granted Kiobel's petition and directed her to serve Cravath with a subpoena within three days. A290. The court further ordered Cravath to produce "the responsive documents," *id.*, but later stayed production pending appeal, A293-94. This appeal followed. A292.

## STANDARD OF REVIEW

This Court reviews a district court's conclusion that a petition satisfies Section 1782's statutory prerequisites *de novo*. *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015). It reviews a district court's application of Section 1782's discretionary factors for abuse of discretion. *In re Edelman*, 295 F.3d 171, 175 (2d Cir. 2002). A district court abuses its discretion whenever it bases its ruling on "an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that 'cannot be located within the range of permissible decisions.' " *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal citation omitted).

## SUMMARY OF ARGUMENT

I.     The District Court thought that it could order Cravath to turn over documents that Cravath holds on Shell's behalf because Cravath "resides" in the Southern District. But when a Section 1782 subpoena seeks a client's documents

16

from its lawyer's hands, the person from whom discovery is sought for jurisdictional purposes is the *client*.

Courts have long held that documents that would not be discoverable in a client's hands retain that protection when transferred to an attorney. *See* 8 J. Wigmore, *Evidence* § 2307 & n.1 (McNaughton rev. 1961). That rule prohibits ordering a law firm to produce documents that "lie outside the statutory limits of the court's power to compel production" under Section 1782 when held by the client. *Application of Sarrio, S.A.*, 119 F.3d 143, 146 (2d Cir. 1997). If documents "became discoverable because the person holding the documents sent them to a lawyer in the United States," the "policy of promoting open communications between lawyers and their clients . . . would be jeopardized." *Id.* "[C]lients would hesitate to show their documents to their attorneys and 'it would be difficult to obtain fully informed legal advice.'" *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

By failing to consider whether Shell "resides or is found" in the Southern District, 28 U.S.C. § 1782(a), the District Court arrived at what this Court has called a "curious and unacceptable result." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 169 (2d Cir. 2003). The relevant Shell entities—residents of the Netherlands, Britain, and Nigeria—are indisputably beyond the narrow reach of Section 1782. The District Court thus has no statutory authority to order discovery

17

from Shell. And with no power to obtain the documents from Shell, the District Court cannot compel Cravath to turn them over to Kiobel.

Section 1782's statutory scope is also cabined by due-process limitations on personal jurisdiction. Courts have held time and again that they may not compel production of a corporation's documents where they lack personal jurisdiction over the *corporation*; merely having jurisdiction over the corporation's agents, officers, or representatives is "patently insufficient." *In re Sealed Case*, 832 F.2d 1268, 1272-73 (D.C. Cir. 1987) , *abrogated on other grounds by Braswell v. United States*, 487 U.S. 99, 102 (1988); *see In re Marc Rich & Co., A.G.*, 707 F.2d 663, 668-69 (2d Cir. 1983). So when a Section 1782 petition seeks documents the nominal respondent holds as an agent of a corporation, a court must ask whether the corporation, too, "resides or is found" in the district. 28 U.S.C. § 1782(a).

Cravath holds the documents that Kiobel's subpoena seeks solely by virtue of its representation of Shell in Kiobel's failed ATS case. With no basis in the record to suggest that Shell is subject to personal jurisdiction here, the District Court could not compel Shell's lawyers to produce its files. By ignoring the true target of Kiobel's petition, the District Court abetted Kiobel's effort to exploit Cravath's attorney-client relationship with Shell and circumvent the statutory and constitutional constraints that barred her from seeking discovery from Shell directly.

II.     The District Court's misapplication of the *Intel* factors provides another, independent basis for reversal. To start, the District Court ignored the fact that Shell—which owns the documents at issue here—will be the defendant in Kiobel's prospective suit. Section 1782 discovery is unnecessary in such cases because the *foreign* court can order whatever discovery it sees fit. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004). The District Court missed that point entirely. It thought that Section 1782 assistance is warranted when the foreign court might not permit discovery. But *Intel*'s first factor asks only whether the person from whom evidence is sought will be a participant in the foreign proceeding, not whether the court will, in fact, permit discovery. Moreover, the court believed that Shell might not have copies of the documents Kiobel seeks. But if Shell's attorneys have the documents, then they are presumptively under Shell's control.

The District Court erred in its application of the second and third *Intel* factors as well. The Netherlands filed a Supreme Court amicus brief in *Kiobel*, opposing U.S. jurisdiction over ATS suits in part because American discovery is so burdensome. Yet the District Court ignored that brief because it did not say that Dutch courts turn away evidence gathered abroad. And the District Court gave *no* weight to the fact that Dutch discovery rules are more restrictive than those here, even though *Intel* and this Court's decisions have directed courts to take such rules

19

into account when exercising their discretion. The District Court's failure to place either factor on the scale irreparably skewed its weighing.

Finally, the District Court mistakenly believed the confidentiality stipulation it ordered Kiobel and Cravath to sign mooted any confidentiality concerns. But Shell is not a party to the stipulation the court ordered, and Shell has no power to enforce it. Worse, the District Court freed Kiobel from the restrictions of her prior stipulation—a step this Court has called "presumptively unfair"—without a "showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *SEC v. TheStreet.com*, 273 F.3d 222, 229-30 (2d Cir. 2001) (internal quotation marks and brackets omitted).

The Court should reverse.

## ARGUMENT

### I.   SECTION 1782 DOES NOT AUTHORIZE DISCOVERY OF SHELL'S DOCUMENTS FROM CRAVATH.

The District Court believed that Kiobel satisfied Section 1782's statutory elements because Cravath "resides" within its district. 28 U.S.C. § 1782(a); *see* A278-79. That was error. Kiobel seeks materials that belong to Cravath's client, Shell. When a subpoena to a law firm seeks discovery of client documents, nearly two centuries of precedent teach that the threshold question is whether those documents would be within the reach of a subpoena in the *client's* hands. The answer to that question here is clearly no. Because Shell resides beyond the

20

statutory and constitutional limits of the District Court's jurisdiction, the court

lacked the "power to compel production" of Shell's documents from Cravath.

*Application of Sarrio*, 119 F.3d at 146.

### A. Section 1782 Discovery Is Subject To Established Limits On Federal Courts' Power To Compel Production.

Section 1782 allows federal district courts to use their discovery powers to

assist foreign tribunals. But that authority has limits, and nothing in Section

1782's text or history suggests that Congress intended it to deviate from the

familiar constitutional and common-law constraints that apply to all judicial

subpoenas. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 709-10 (1974)

(observing that judicial subpoenas are limited "by privileges against forced

disclosure, established in the Constitution, by statute, or at common law"); *United*

*States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) ("The judicial subpoena power

not only is subject to specific constitutional limitations" such as those imposed by

the Fourth and Fifth Amendments "but also is subject to [Article III's structural]

limitations.").

Section 1782's text gives no indication—let alone the clear statement courts

require—that Congress intended to exempt it from existing jurisdictional rules that

govern the taking of discovery. *See S. New England Tel. Co. v. Glob. NAPs Inc.*,

624 F.3d 123, 135 (2d Cir. 2010) ("Congress legislates against the backdrop of

existing jurisdictional rules that apply unless Congress specifies otherwise.")

21

(internal quotation marks omitted).  On the contrary, the statute's jurisdictional

provision is drawn narrowly, reaching only persons "resid[ing]" or "found" in a

particular judicial district.  *Cf. Dynegy Midstream Servs., LP v. Trammochem*, 451

F.3d 89, 95 (2d Cir. 2006) ("Congress knows how to authorize nationwide service

of process when it wants to provide for it." (quoting *Omni Capital Int'l, Ltd. v.

Rudolf Wolff & Co.*, 484 U.S. 97, 106 (1987))).

Nor does the text suggest any intent to break from common-law limitations

on discoverability.  *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104,

108 (1991) ("[C]ourts may take it as given that Congress has legislated with an

expectation that" established common-law "principle[s] will apply except when a

statutory purpose to the contrary is evident.") (internal quotation marks omitted).

Indeed, the broad exception for materials covered by "any legally applicable

privilege" suggests that Congress intended to give *greater* protection to the targets

of Section 1782 discovery than would otherwise be available.  The legislative

history explains that this "flexible" provision covers "all privileges to which the

person may be entitled, including privileges recognized by foreign law" and

"leaves the recognition of the privileges to which the person is entitled to

development by case law or separate statute or rule."  S. Rep. No. 88-1580, at 9

(1964); *see* H.R. Rep. No. 88-1052, at 10-11 (1963).

**B.** **A Court Cannot Order A Law Firm To Produce Client Documents That Would Fall Beyond The Statutory Reach Of A Subpoena If The Client Had Retained Them.**

A long line of precedent instructs that a subpoena directed to an attorney cannot reach client documents the court could not compel the client to produce. Where a Section 1782 subpoena seeks client documents from a law firm, then, the court must ask whether the *client* "resides or is found" in the judicial district in which the application is made. If the client does not, the district court has no authority to compel it to produce and thus no power to "order" the attorney "to produce [the] document or other thing" sought. 28 U.S.C. § 1782(a).

In *Fisher v. United States*, 425 U.S. 391 (1976), the Supreme Court embraced the principle that a document that would be privileged in a client's hands remains privileged if transferred to an attorney for the purpose of obtaining legal advice. That rule was hardly new; the leading treatise the Court cited traced the rule's origins to the early days of the Republic. *See* 8 J. Wigmore, *Evidence* § 2307 n.1 (McNaughton rev. 1961).[2] And it was simple: "The attorney is but the

---

[2] Among state courts within this Circuit, Wigmore cited *Durkee v. Leland*, 4 Vt. 612, 615 (1832) (holding that an attorney could not be "compelled to produce any papers which had been intrusted to him by his client" because "[t]he possession of the attorney was, for this purpose, the possession of the client"); *McPherson v. Rathbone*, 7 Wend. 216 (N.Y. Sup. Ct. 1831) (holding that papers delivered to an attorney by his clients cannot be obtained by subpoena of the attorney); and *Lynde v. Judd*, 3 Day 499, 499 (Conn. 1807) (same).

agent of the client." *Id.* "If the client is compellable to give up possession [of a document], then the attorney is; if the client is not, then the attorney is not. It is merely a question of possession, and the attorney is in this respect like any other agent." *Id.*; *see Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962) (citing Wigmore for the same proposition).

The rule that *Fisher* recognized is also indispensable: "If discovery of documents could be obtained more easily from attorneys than from their clients, clients would hesitate to show their documents to their attorneys and 'it would be difficult to obtain fully informed legal advice.' " *Sarrio*, 119 F.3d at 146 (quoting *Fisher*, 425 U.S. at 403). That would "defeat the purposes of the attorney-client privilege," *id.*, and undermine the "broader public interests in the observance of law and administration of justice" that the privilege serves. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (observing that the assistance of counsel "can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

This Court took this reasoning one step further in *Sarrio*. *Sarrio* involved a Section 1782 subpoena issued to the Chase Manhattan Bank. Reading Section 1782 to reach only "materials found in the United States," the district court granted Chase's motion for a protective order shielding documents sent by the bank's foreign branches to its New York counsel for review. *Sarrio*, 119 F.3d at 145.

Assuming, without deciding, that the district court's reading was correct, this Court found that "Chase had a substantial claim" that documents transferred "to New York to obtain its attorney's advice as to their discoverability" were privileged from production. *Id.* at 146.

The *Sarrio* court saw no difference between documents not available to process because of constitutional or common-law privileges and documents that were unavailable "because they [lay] outside the *statutory* limits of the court's power to compel production." *Id.* (emphasis added). After all, the very same "policy of promoting open communications between lawyers and their clients . . . would be jeopardized if documents unreachable in a foreign country became discoverable because the person holding the documents sent them to a lawyer in the United States." *Id.*

Although *Sarrio* left the question of Section 1782's reach for another day,[3] this Court elaborated on its reasoning in *Ratliff*. Discussing a subpoena issued under Fed. R. Civ. P. 45, the *Ratliff* court warned that it "would produce a curious and unacceptable result" if documents "not otherwise subject to production" were exposed "to discovery demands after delivery to one's attorney whose office was

---

[3]    "A change of circumstances on appeal"—a letter from Chase dropping its privilege objection and indicating that the documents in question had been sent back overseas—"ma[de] it unnecessary" to resolve these questions. *Sarrio*, 119 F.3d at 147 & n.3.

25

located within the sweep of a subpoena." 354 F.3d at 169. "The price of an attorney's advice would be disclosure of previously protected matters." *Id*. And that "price" would both "chill open and frank communications between attorneys and their clients" and effectively bar "local counsel from representing foreign entities." *Id.*

The protection necessary to avoid that "curious and unacceptable result" covers documents "regardless of their content." *Id.* at 169, 170. A party challenging a subpoena need not argue that production would reveal a request for legal advice or attorney work-product. The question is simply whether the court would have the power to subpoena the documents directly from the client. If the answer is yes, then the documents are "as susceptible to subpoena" in the hands of his attorney "as those stored in a warehouse within the district court's jurisdiction." *Id.* at 170; *see Colton*, 306 F.2d at 639. But if the answer is no, then transmitting the documents to the client's attorney—even an attorney whose office lies "within the sweep of the subpoena"—cannot subject them to disclosure. *Ratliff*, 354 F.3d at 169.

*Fisher*, *Sarrio*, and *Ratliff* bar Kiobel's attempts to obtain Shell's documents from Cravath. Shell neither "resides [n]or is found" in the Southern District of New York; the relevant Shell entities are resident in the Netherlands, Britain, and Nigeria. *See supra* pp. 7, 9; *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y.

2007) (Rakoff, J.) (finding "no case finding that a corporation resided or was found in a district where the corporation was neither incorporated nor headquartered there"). Shell thus lies "outside the statutory limits of the court's power to compel production," a fact that Kiobel never disputed below. *Sarrio*, 119 F.3d at 146.[4]

Moreover, it is undisputed that Cravath obtained the materials in question in the course of representing Shell in *Kiobel* and *Wiwa*. As in *Sarrio*, Cravath was sent or given access to these documents for the purpose of determining whether they were subject to production and producing them on Shell's behalf. Simply put, Shell caused documents otherwise beyond the reach of Section 1782 to be transferred to Cravath for purposes of obtaining Cravath's counsel—exactly the scenario in which courts have warned that ordering production would vitiate the purposes of attorney-client privilege.[5]

---

[4]     *Sarrio* focused on the open question whether Section 1782 reaches *documents* outside the United States. That was presumably because the respondent, Chase Manhattan Bank, had control over documents held by its branches abroad. *See Sarrio*, 119 F.3d at 145 (noting that Chase's New York counsel "directed" foreign branches to send him the documents). But here, Cravath has no right to obtain documents from Shell. The question is rather whether *Shell* is subject to subpoena under Section 1782.

[5]     The District Court suggested that this Court has previously cast doubt on such an argument. A279. Not so. The Court affirmed a district court decision denying a Section 1782 petition that criticized any "analysis of the duration of residency of the documents or even why a respondent has the documents." *In re Application of Schmitz*, 259 F. Supp. 2d 294, 296 (S.D.N.Y. 2003). But the Court found the district court's discretionary analysis sufficient to uphold denial of the

Shell did not waive its right to resist a subsequent subpoena merely by complying with its discovery obligations in *Kiobel*. This case is not like *Ratliff*, where a foreign client's voluntary disclosure of documents to authorities in the United States rendered those documents "otherwise subject to production," 354 F.3d at 169, despite the client's foreign residence. In *Ratliff*, a Dutch accounting firm "voluntarily provided documents and testimony in response to informal [SEC] requests" through its New York counsel even though it was "not subject to the SEC's personal jurisdiction." *Id.* at 167. Assuming that the client's documents "were entitled to protection" when sent to the New York firm "to secure the firm's legal advice," the court explained that "such protection was lost when [the client] voluntarily authorized [its counsel] to send the documents to the SEC." *Id.* at 170. The client could not invoke "the protection discussed in *Sarrio*" to shield "documents that have already seen the bright light of public disclosure." *Id.* at 170. That made sense. After all, the rule goes both ways: documents that would *not* be protected in the client's hands "obtain no special protection because they are housed in a law firm." *Id.* at 170-71 But the disclosures in *Ratliff* bear no

---

petition, making it unnecessary for the Court to "address the difficult question . . . whether § 1782 applies to documents only temporarily present in the jurisdiction for the purpose of discovery in another case." *Schmitz*, 376 F.3d at 85; *see U.S. Philips Corp. v. Iwasaki Elec. Co.*, 142 F. App'x 516, 517-518 (2d Cir. Aug. 9, 2005) (noting the open question). And neither the *Schmitz* district court nor this Court addressed the concerns expressed in *Sarrio* and *Ratliff*.

28

resemblance to Shell's compliance with its obligation to respond to discovery requests propounded in the *Kiobel* and *Wiwa* cases for at least three reasons.

*First*, unlike the client in *Ratliff*, Shell did not voluntarily subject itself to jurisdiction here or produce its documents for purposes of "creat[ing] a favorable impression." *Id.* at 167, 170. On the contrary, Shell was haled into court by the *Kiobel* and *Wiwa* plaintiffs and it continued to challenge the court's subject-matter and personal jurisdiction. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 149 (2d Cir. 2010) (dismissing *Kiobel* for lack of subject-matter jurisdiction); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 92 (2d Cir. 2000) (reversing the district court's dismissal of *Wiwa* for lack of personal jurisdiction by applying New York's pre-*Daimler A.G. v. Bauman*, 134 S. Ct. 746 (2014) "doing business" test). Shell complied with its discovery obligations under the threat of compulsion from the district court. On that basis alone, *Ratliff* is distinguishable.

*Second*, Shell produced the documents at issue here subject to strict confidentiality orders. Under the Federal Rules of Evidence, "[a] federal court may order that [a] privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d). And even if an agreement among the parties to preserve such rights is not "incorporated

into a court order," it is still "binding . . . on the parties to the agreement." Fed. R. Evid. 502(e).

The confidentiality orders the court entered in *Wiwa* and *Kiobel* preserved the *Sarrio* protection here. Among other things, the orders specifically provided that "[c]ompliance with the terms of this Order shall not be deemed an admission that any Discovery Material is not otherwise protected from disclosure or admissible in evidence and shall not constitute a waiver of the right of any person to object to the production of any Discovery Material *for any reason* consistent with the Federal Rules of Civil Procedure." A60 (¶ 11) (emphasis added). In light of this plain statement, the fact that Shell produced its confidential documents to Kiobel did not render them "otherwise subject to production" under *Ratliff*. 354 F.3d at 169.

*Third*, it is significant that the Supreme Court vindicated Shell's jurisdictional objections to Kiobel's suit. The Court held that U.S. courts lacked the "power to hear [her] case," let alone decide it. *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (internal quotation marks omitted); *see Kiobel*, 133 S. Ct. at 1669. Kiobel was therefore never entitled to Shell's evidence and had no right to the discovery materials. *Cf. Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 93 (2d Cir. 2014) (noting that a court may order

"compliance with the disclosure requirements of the Federal Rules" once it has "subject matter and personal jurisdiction" (internal quotation marks omitted)).

As a result, even if the plain terms of the confidentiality orders were not independently sufficient to preserve Shell's right not to produce its confidential documents to Kiobel, the fact that Shell complied in good faith with obligations that later proved invalid did not expose its documents to subsequent production. In other words, the *fact* of disclosure does not determine the *legal right* to avoid disclosure. Where subsequent review determines that a party was subjected to discovery obligations erroneously, the fact that the party complied with them does not constitute a waiver. *Cf. Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009) (noting that "[a]ppellate courts can remedy the improper disclosure of privileged material . . . by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence"). That is precisely what happened in *Kiobel*.

*Finally*, it makes no difference that the documents Kiobel seeks have "already been vetted for privilege." A280. The right to refuse production does not depend on the documents' contents, *see Ratliff,* 354 F.3d at 170; it follows from Congress's choice to limit the reach of Section 1782 discovery to persons "resid[ing] or . . . found" in the court's judicial district. And unlike the law firms in some cases, Cravath has consistently maintained that this limitation is fatal to

31

Kiobel's petition because Cravath's client, Shell, is outside the statute's sweep. *Cf. In re Application for an Order Pursuant to 28 U.S.C. § 1782*, 773 F.3d 456, 460 (2d Cir. 2014) (not contesting the jurisdictional element); *In re Republic of Kazakhstan*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (not contesting the jurisdictional element as to the client).

Reading Section 1782 to reach Shell's documents would produce the same "curious and unacceptable result" this Court condemned in *Ratliff*, 354 F.3d at 169. If the "price" of Shell's engagement of Cravath to manage its responses to discovery in *Kiobel* and *Wiwa* was to expose Shell's documents to production years later for use in separate litigation on another continent, notwithstanding comprehensive confidentiality stipulations, it would "chill" attorney-client communications just as surely as if the documents included attorney work-product or other protected information. *Id.*

Indeed, permitting Kiobel's end-run around Section 1782's statutory limits would be particularly damaging. Shell's attorneys gathered the documents at issue in response to a lawsuit over which the U.S. courts lacked jurisdiction. And once gathered, Shell produced those materials under a confidentiality stipulation—to which Kiobel *herself* was a party—that expressly provided that they could be used "solely for purposes of the Litigation and for no other purpose whatsoever." A58 (¶ 7). Allowing Kiobel to obtain and use that same material from Cravath in a

32

separate lawsuit would be fundamentally unjust: it would mean that any litigant who can survive a motion to dismiss (even when that ruling is in error) can avail herself of the unmatched discovery procedures available in the United States, stipulate that she will not use the fruits of those procedures in another case, and then invoke Section 1782 to cast off the stipulation and file suit in another jurisdiction, anyway. *See infra* pp. 51-55. This Court should not allow the world's premier legal market to become a destination for discovery tourists looking to seize documents belonging to foreign companies represented by local counsel for purposes of foreign litigation.

### C. A Court Cannot Compel A Law Firm To Produce A Client's Documents Where The Client Is Not Subject To Personal Jurisdiction.

Even if Kiobel's bid to obtain Shell's documents from Cravath was not foreclosed by Section 1782's narrow reach, due process would require the same result. It is axiomatic that a court cannot compel compliance with a subpoena unless it has personal jurisdiction over the subpoena's target. *See, e.g.*, *In re Marc Rich*, 707 F.2d at 667. And it is equally clear that where a subpoena for corporate documents is addressed to a corporation's agent, officer, or representative, the court must have jurisdiction over the *corporation*—not just the agent or officer—before it can compel production. "The mere fact that [a] court has jurisdiction over an alleged representative of" a company "is patently insufficient to establish

33

jurisdiction over the compan[y] or to entitle" the party seeking discovery "to view company documents." *In re Sealed Case*, 832 F.2d at 1272-73; *see also In re Marc Rich*, 707 F.2d at 667; *Estate of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 332 (S.D.N.Y. 2006); *cf. Daimler*, 134 S. Ct. at 759-60 & nn.13-15 (2014) (a court's jurisdiction over a corporation's agent does not establish jurisdiction over the corporation). Section 1782 did not—and could not—change that rule. So when a Section 1782 subpoena seeks a corporation's documents from an agent such as the corporation's outside counsel, the court may not order discovery unless the corporation itself "resides or is found" in the court's judicial district.

The D.C. Circuit's analysis in *In re Sealed Case* illustrates the point. There, the special prosecutor investigating the Iran-Contra affair sought to enforce a grand jury subpoena against a U.S. citizen alleged to be the custodian for eight foreign companies. 832 F.2d at 1272-73. The district court thought that "[p]ersonal jurisdiction over a company's representative suffices . . . to order compliance with a subpoena requesting production of the *company's* records, regardless of whether the company itself has any connection with the United States." *Id.* The D.C. Circuit disagreed. "By serving the Witness as 'custodian' for the eight companies," the court of appeals explained, "the Independent Counsel has *for jurisdictional purposes* effectively attempted to serve the companies themselves." *Id.* at 1272 (footnote omitted). Accordingly, "in order to secure a valid order

34

directing the production of the companies' records," the independent counsel was required to "demonstrate that the District Court has personal jurisdiction over each of the companies." *Id*.

This Circuit applies the same principle. In *In re Marc Rich*, this Court considered a district court's power to enforce a grand-jury subpoena served in the United States on officers of a Swiss investment firm. The court explained that "service of a subpoena upon [the firm's] officers within the territorial boundaries of the United States would be sufficient to warrant judicial enforcement of the grand jury's subpoena" only where the district court had "personal jurisdiction over [the firm]." 707 F.2d at 665, 667-68; *cf. In re Warrant to Search a Certain E–Mail Account Controlled & Maintained by Microsoft Corp.*, 829 F.3d 197, 215 (2d Cir. 2016) ("[O]ur Court has never upheld the use of a subpoena to compel a recipient to produce an item under its control and located overseas when the recipient is merely a caretaker for another individual or entity and that individual, not the subpoena recipient, has a protectable privacy interest in the item.").

More recently, a court in the Southern District cited *In re Sealed Case* to limit a subpoena issued under 28 U.S.C. § 1783, a statute authorizing service of subpoenas on U.S. nationals or residents overseas. *Estate of Ungar*, 412 F. Supp. 2d at 332. The court concluded it was powerless to compel the production of "corporate documents in [the] Respondent's possession by virtue of his position as

35

Chairman of [a corporation]" where it lacked personal jurisdiction over that corporation.  *Id.* at 329; *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 & n.20 (2d Cir. 2014) (requiring that a court establish personal jurisdiction before enforcing a subpoena); *Dynegy Midstream Servs.*, 451 F.3d at 96 (quashing motion to compel for lack of personal jurisdiction).

That rule prohibits the District Court's order directing Cravath to produce Shell's documents.  The attorney-client relationship "is a quintessential principal-agent relationship." *Commissioner v. Banks*, 543 U.S. 426, 436 (2005); *see also, e.g.*, *Tyszka v. Make & Take Holding, LLC*, 72 A.D.3d 1620, 1621 (N.Y. App. Div. 4th Dep't 2010) ("[T]he relationship created between an attorney and his [or her] client is that of principal and agent." (quoting *Burger v. Brookhaven Med. Arts Bldg., Inc.*, 131 A.D.2d 622, 624 (N.Y. App. Div. 2d Dep't 1987)).  And Cravath has possession of Shell's documents only "by virtue of" its representation of Shell in the *Kiobel* and *Wiwa* matters.  *Estate of Ungar*, 412 F. Supp. 2d at 329.  The District Court would therefore have had to have personal jurisdiction over *Shell* before it could compel Cravath to produce the documents Kiobel seeks.

Nothing in the record suggests that Shell could be subject to personal jurisdiction here.  In order to exercise personal jurisdiction over a foreign party consistent with due process, a court must satisfy itself that the "defendant has sufficient minimum contacts with the forum to justify the court's exercise of

personal jurisdiction over the defendant," and that the "assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (internal quotations marks omitted). A court may assert "general" personal jurisdiction over a party as to any and all claims only when the party's contacts with the forum "are so constant and pervasive as to render it essentially at home" there. *Daimler*, 134 S. Ct. at 751 (internal quotation marks and brackets omitted). Alternatively, a court may exercise "specific" jurisdiction where the party's in-forum activity "*gave rise to the episode-in-suit*." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). In an action to enforce a subpoena, this Court has instructed district courts to consider whether the subpoena arises from the target's contacts with the forum. *See Gucci*, 768 F.3d at 136, 141-42.

Even if Kiobel had attempted to make the required showing, it is highly unlikely that she could have succeeded. *See Waldman*, 835 F.3d at 334 (the proponent of jurisdiction has the burden of proving it). Shell is certainly not subject to general jurisdiction in the Southern District because none of the relevant entities is incorporated, effectively headquartered, or has its principal place of business there. *See Daimler*, 134 S. Ct. at 761 n.19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445-447 (1952)); *Havlish v. Royal Dutch Shell*

37

*PLC*, No. 13 Civ. 7074 (GBD), 2014 WL 4828654 (S.D.N.Y. Sept. 24, 2014)

(declining to exercise general jurisdiction over Royal Dutch Shell in the absence of

sufficient forum contacts). Nor could Kiobel seriously contend that her subpoena

somehow arose from contacts—if there are any—that the relevant entities may

have had with the United States. And if the lack of personal jurisdiction over a

corporation is sufficient to bar even an American grand jury investigating a federal

crime from obtaining corporate documents from an agent or representative based in

the United States—as it did in *In re Sealed Case* and *In re Marc Rich*—it cannot

countenance Kiobel's attempt to invoke Section 1782 to obtain Shell's documents

here.

*       *       *

Respecting these basic constraints on courts' discovery powers would not

"effectively exempt many law firms from having to respond to Section 1782

petitions," as the District Court believed. A279. Nor would it, as Kiobel claimed

below, allow companies or individuals to shield documents by sending them to

their attorneys. Where a court properly exercises statutory authority and personal

jurisdiction over a party, there is no obstacle to ordering production of non-

privileged materials either from the party's attorney or the party directly. *Cf. U.S.*

*Philips Corp.*, 142 F. App'x at 517 (avoiding jurisdictional question "because both

client and counsel are in the Southern District of New York").

38

The problem with Kiobel's petition is not that it is addressed to a law firm; it is that it attempts to exploit Cravath's attorney-client relationship with Shell to circumvent statutory and constitutional constraints that would preclude her from obtaining discovery from Shell directly. "[T]he drafters of § 1782 did not intend" to transform U.S. courts into "clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world." *In re Godfrey*, 526 F. Supp. 2d at 423 (quoting Hans Smit, *American Assistance To Litigation In Foreign And International Tribunals: Section 1782 Of Title 28 Of The U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 11 (1998)). This Court should decline to do so.

## II.    THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING KIOBEL'S PETITION.

Even if Section 1782 could be read to reach Shell's documents, the District Court abused its discretion in granting discovery. The Supreme Court has "emphasized" that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 264. Rather, a court should exercise its discretion by giving due consideration to the four factors set out in *Intel*. *Id.* at 264-265.

The District Court misconstrued each of those factors here, and any one of its errors warrants reversal. *See Huang v. I.N.S.*, 436 F.3d 89, 99 (2d Cir. 2006) (a district court's "failure to weigh the relevant factors" identified in the applicable

case law is "manifestly contrary to law" and constitutes an abuse of discretion). Together, they confirm what Cravath argued below: the District Court should have denied Kiobel's petition.

### A. The District Court Misconstrued *Intel*'s First Factor.

The first *Intel* factor directs courts to consider whether "the person from whom discovery is sought is a participant in the foreign proceeding." 542 U.S. at 264. If it is, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad," because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.*; *see In re Application of Thai-Lao Lignite (Thailand) Co.*, 821 F. Supp. 2d 289, 298 (D.D.C. 2011) (noting the inefficiency and "questionable prudence" of "direct[ing] a French entity, through its U.S.-based subsidiary, to produce France-based documents or information about French assets to a French court").

Although Cravath will not be a party to Kiobel's Dutch suit, Kiobel's Section 1782 petition was directed to Cravath only because Cravath was Shell's agent. *See* A7-10. Kiobel's Dutch counsel asserted that Shell—which owns the documents that the District Court directed Cravath to produce—will be the defendant in the Dutch proceeding. And she further asserted that the Dutch judiciary "considers itself competent to rule on cases pertaining to wrongful acts

40

committed by Shell in Nigeria." A85 ( ¶¶ 3-4). Under this Court's precedent, then, the first *Intel* factor weighed against granting Kiobel's petition.

In *Schmitz*, the Court held that courts should look past nominal law-firm respondents in analyzing the first *Intel* factor and consider the residence of the true target of the discovery. The Court observed that although Cravath was "technically the respondent" in *Schmitz*, "for all intents and purposes petitioners are seeking discovery from [Cravath's client], their opponent in the [foreign] litigation." 376 F.3d at 85. In ruling on Kiobel's petition, the District Court acknowledged—albeit in a footnote—that the same could be said about Cravath and Shell here. A279 n.1. But *Schmitz* went on to conclude that because Cravath's client was "a participant in the [foreign] litigation subject to [foreign] court jurisdiction, petitioner's need for § 1782 help 'is not as apparent as it ordinarily is.' " 376 F.3d at 85 (quoting *Intel*, 542 U.S. at 264). The District Court breezed past this conclusion entirely.

The District Court instead held that the first *Intel* factor favored Kiobel because the documents she seeks might be "unobtainable absent § 1782(a) aid." A284 (quoting *Intel*, 542 U.S. at 264). The court based that conclusion on two legal errors. First, the court thought that Kiobel might not be able to obtain discovery in the Netherlands because, without Shell's documents, she might fail to present enough factual material to file suit under Dutch procedure. *Id.* Second, the

court believed that Shell might not possess all of the documents that Kiobel was requesting. A284-85.

To begin with, whether Section 1782 aid is appropriate does not depend on whether Dutch procedure would allow Kiobel discovery. Under *Intel*, all that matters is that the documents would be sought from a participant in a Dutch proceeding and thus presumptively within the Dutch court's "jurisdictional reach." 542 U.S. at 264. The Dutch court would then have the power to order the documents produced if it deemed production appropriate under its own rules of procedure. By confusing the Dutch court's jurisdiction—its "general power to exercise authority over all persons and things with its territory," *Jurisdiction*, *Black's Law Dictionary* (10th ed. 2014)—with Dutch law's limitations on how a court may exercise that jurisdiction, the District Court misinterpreted *Intel*'s first factor.

Kiobel's own attorney told the District Court that "the Dutch judiciary considers itself competent to rule on cases pertaining to wrongful acts committed by Shell," A85 (¶ 3), and that a Dutch court *could* compel production of documents from Shell under certain circumstances—indeed, that one had done so recently. A195-96 (¶ 7). That is what matters for *Intel*'s first factor.

The District Court also erred in concluding that Shell might no longer have the documents that Cravath holds on its behalf. A284-85. It is black-letter law that

42

clients have a right to access documents held on their behalf by counsel. *See Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 689 N.E.2d 879, 882 (N.Y. 1997) (holding that a client has "presumptive access to the attorney's entire file on the represented matter, subject to narrow exceptions"); *Restatement (Third) of the Law Governing Lawyers* § 46(2) (Am. Law Inst. 2000) ("On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation . . . ."). And documents from the earlier litigation are under Shell's control when they are in the hands of Shell's attorney, Cravath. *See* Charles Alan Wright *et al.*, 8B *Federal Practice & Procedure* § 2210 (3d ed.) (a party has "control" over a document "that it has turned over to its attorney"); *see also Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) (observing that "courts in this district have held that documents held by outside counsel are in the possession, custody, and control of their clients") (internal quotation marks omitted); *Johnson v. Riverhead Cent. Sch. Dist.*, No. CV 14-7130 (DRH) (AKT), 2016 WL 4507002, at *6 (E.D.N.Y. Aug. 26, 2016) (same).

In the context of *Intel*'s first discretionary factor, then, so long as the foreign tribunal has the power to reach the client's documents in counsel's hands—by directing the client to exercise its right to retrieve them—the factor is satisfied. Under the law of this Circuit, "[a] party may be ordered to produce documents

where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court." *M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986); *accord In re Woolworth Corp. Sec. Class Action Litig.*, 166 F.R.D. 311, 313 (S.D.N.Y. 1996). Kiobel has not argued that Dutch procedure is any different. And district courts facing similar facts have concluded that the first *Intel* factor favors the party resisting discovery. *See In re Application of OOO Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608, at *6 (S.D.N.Y. Oct. 15, 2009) (finding the first *Intel* factor favored the respondent where "the information [the petitioner] seeks most certainly is not" beyond the reach of the Dutch courts); *cf. In re Bank of Cyprus Pub. Co.*, No. 10 Misc. 23, 2011 WL 223168, at *3 (S.D.N.Y. Jan. 21, 2011) (petitioner's offer to withdraw petition in the Southern District was "entirely sensible" because documents from counsel in Manhattan could be obtained on demand by the client in another district).

The District Court's assessment of the first *Intel* factor thus rested entirely on "an erroneous view of the law"—a textbook abuse of discretion. *In re Sims*, 534 F.3d at 132 (internal quotation marks omitted). Properly construed, the first *Intel* factor weighed heavily—even overwhelmingly—in Shell's favor.[6] Kiobel's

---

[6] Kiobel's case is nothing like the rare circumstances where the Court has allowed Section 1782 discovery despite the first *Intel* factor favoring the

44

own Dutch counsel alleged that a Dutch court had the power to "order [Shell] to produce evidence," making the District Court's order directed to Cravath as unnecessary as it is damaging. *Intel*, 542 U.S. at 264.

### B. The District Court Gave No Weight To Dutch Discovery Rules Or The Netherlands' Opposition In *Kiobel*.

The District Court also erred in its application of the second and third *Intel* factors, which deal, respectively, with "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance" and "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. The Netherlands signaled that it is not receptive to using the discovery *in this very dispute* when it filed an amicus brief in the Supreme Court opposing the Southern District's jurisdiction over cases like *Kiobel*—in part because of the broader discovery that would entail. And the District Court gave no weight at all to the Netherlands' more-restrictive discovery rules, even though *Intel* and this Court's

respondent. The Court has done so only where, for example, there is some doubt that the target has or will comply with its foreign discovery obligations. *See In re Catalyst Managerial Servs., DMCC*, __ F. App'x __, 2017 WL 716846, at *3 (2d Cir. Feb. 23, 2017) (allowing discovery where "questions had been raised about [the respondent's] productions" in the foreign proceedings); *In re Application of Gorsoan Ltd. & Gazprombank OJSC v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016) (similar). Kiobel has not argued that Shell would refuse to comply with a Dutch order commanding Shell to produce the discovery its attorneys gathered.

precedents direct district courts to consider such rules in their discretionary weighing.

Under the second *Intel* factor, this Court gives significant weight to "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," such as "a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *see also Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).

The proof in this case could hardly have been more authoritative. The Netherlands' amicus brief submitted in *Kiobel*—signed by its Ministry of Foreign Affairs's Legal Advisor—told the Supreme Court that the Netherlands "object[s] to the efforts of U.S. litigators and judges to bypass the legal systems of other sovereigns by deciding civil cases involving foreign parties where there is no significant nexus to the U.S." A164. Among other things, the Netherlands objected to "the generally broader discovery available to plaintiffs in the U.S. [that] tend[s] to drive up the non-reimbursable litigation costs that an ultimately successful defendant will still have to bear." A167. And the Netherlands pointed out the detrimental effects on reciprocal discovery that entertaining such suits imposes. A169. It cited "blocking statutes" enacted by foreign governments in the wake of U.S. antitrust suits based on extraterritorial conduct forbidding their

46

nationals from complying with U.S. discovery demands and orders from foreign courts refusing to honor U.S. discovery requests. *Id.*

The District Court dismissed the Netherlands' amicus brief because, in the court's view, "it did not discuss Section 1782 or otherwise address whether Dutch courts accept evidence 'gathered under foreign procedures.' " A286. The court relied instead on this Court's general statement in another case that the party resisting discovery in that matter had not presented evidence "that Dutch courts reject the use in litigation of materials obtained through § 1782." A287 (quoting *Mees*, 793 F.3d at 303 n.20).

The District Court's reading of the Netherlands' *Kiobel* amicus brief was far too parsimonious. Dutch courts might not reject Section 1782 discovery in the ordinary case. But this is not the ordinary case. The Netherlands has actually told the Supreme Court that U.S. courts should not exercise subject-matter jurisdiction over extraterritorial suits *like Kiobel's* in part because of the expanded discovery they entail. A164, A167.

At the very least, the Netherlands' amicus brief is the best available evidence of how Dutch courts would view U.S "assistance" in such cases. It explains that far from encouraging foreign courts to cooperate by sending evidence from their nationals to the United States, broad assertions of extraterritorial jurisdiction like the Southern District claimed in *Kiobel*—and the discovery resulting from these

47

claims of extraterritorial jurisdiction—encourage foreign nations to retaliate by enacting blocking statutes and erecting other barriers to American discovery requests. *See* A169-70. This Court has instructed that a district court's discretion to grant Section 1782 discovery is "bound[ed]" by the statute's aim of "encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz*, 376 F.3d at 84 (internal quotation marks omitted). The District Court should have given the Dutch government's concerns on that score at least *some* weight. In rejecting them out of hand, the District Court misapplied *Intel*'s second factor.

The District Court did no better in interpreting and applying the third *Intel* factor. It dismissed Cravath's argument that Kiobel's Section 1782's petition was a way to evade more-restrictive Dutch discovery rules with the observation that the statute imposes neither a foreign discoverability nor a foreign exhaustion requirement. A287-88. But even though there is no foreign-discoverability or foreign-exhaustion *requirement*, *Intel* holds that the discoverability of the requested documents in the foreign forum is *relevant* to the district court's exercise of its discretion. 542 U.S. at 264; *see id.* at 260-63; *Huang*, 436 F.3d at 99 (a failure to consider relevant factors constitutes an abuse of discretion). Indeed, this Court underscored in *Mees*—the very case the District Court cited as supporting its discoverability-doesn't-matter rule, A288—that "district judges may well find that

48

in appropriate cases a determination of discoverability under the laws of the foreign jurisdiction is a useful tool in their exercise of discretion under section 1782." 793 F.3d at 303 (quoting *In re Application of Gianoli Aldunate*, 3 F.3d 54, 60 (2d Cir. 1993)). That would have been a simple task here; Kiobel's Dutch attorney told the District Court all it needed to know about Dutch discovery law. *See* A86 (¶ 6), A195-96 (¶¶ 7-8). There was no risk of a "battle-by-affidavit of international legal experts." *Euromepa*, 51 F.3d at 1099.

The District Court's refusal to give *any* weight to the Netherlands' stricter discovery rules was particularly problematic given the totality of the circumstances in this case. To be sure, another country's narrower discovery rules "should not be afforded undue weight." *Mees*, 793 F.3d at 303. But Kiobel's petition not only seeks to circumvent the Netherlands' discovery rules, it seeks to do so by exploiting an attorney-client relationship her own suit in *Kiobel* necessitated and by breaking the terms of her confidentiality agreement with Shell. *See infra* pp. 51-55. The District Court should not have turned a blind eye to such tactics.

## C. The District Court Should Not Have Ignored Kiobel's End-Run Around The Original Confidentiality Orders Or Dismissed Cravath's Confidentiality Concerns.

Finally, the District Court erred in concluding that the fourth *Intel* factor— whether the requested discovery is "unduly intrusive or burdensome," 542 U.S. at 265—favored Kiobel. A289-90. Among other things, this factor considers

49

whether the information sought is confidential, and, if so, whether the district court can adequately protect it from unwarranted disclosure. *See Intel*, 542 U.S. at 266; *Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 623-624 (8th Cir. 2016) (Colloton, J.).

The District Court thought that the new confidentiality stipulation it ordered Kiobel and Cravath to sign rendered Cravath's complaints about Kiobel's use of the discovery documents "moot." A289. The District Court was seriously mistaken. An agreement between Kiobel and Cravath could not possibly address Cravath's argument that only *Shell*—or the court, upon a showing sufficient to overcome the "strong presumption against the modification of a protective order," *TheStreet.com*, 273 F.3d at 229—had the authority to de-designate materials as confidential. A115. To the extent the District Court thought it could avoid considering the documents' confidentiality because the issue was resolved, it clearly erred. *See In re Sims*, 534 F.3d at 132. Cravath entered into the stipulation because the District Court told it to, but Cravath explicitly "d[id] not concede that the discovery" Kiobel sought was proper and reserved its rights on appeal. A243 (¶ 24).

Evaluated on the merits, the fourth *Intel* factor favored Cravath. Shell agreed to produce discovery to Kiobel through Cravath in reliance on the parties' stipulated confidentiality orders, which forbid Kiobel from using the discovery for

any purpose other than that specific litigation.  A58, A74 (¶¶ 7-9).  If Shell knew that having Cravath produce the documents on its behalf risked subsequent disclosure of those documents for use in another forum, it might have resisted discovery, opted to produce the documents itself (rather than through counsel), or directed Cravath to destroy the materials.  Shell, in short, might have assessed the situation differently if it had known that signing a confidentiality order *forbidding* the use of its materials in another forum in fact *exposed* the company to use of those materials in another forum.

This Court has recognized that litigants like Shell have significant reliance interests riding on protective orders.  That is why it is "presumptively unfair" to breach an order that "assure[s] confidentiality and upon which the parties have reasonably relied."  *TheStreet.com*, 273 F.3d at 230.  The bar for doing so is high.  A party seeking relief from a confidentiality order must either show "improvidence in the grant of the order or some extraordinary circumstance or compelling need."  *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011) (internal quotation marks omitted).

Kiobel did not—and cannot—make either showing.  She obviously cannot show that the confidentiality order in *Kiobel* was improvidently granted—she was a party to the order and asked the district court to enter it.  A55-67, A69-83.  Judicial estoppel would bar such a change of heart.  *See In re Adelphia Recovery*

51

*Trust*, 634 F.3d 678, 695 (2d Cir. 2011) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position" (citation omitted)).  Nor can Kiobel show any extraordinary circumstances or compelling need; "an attempt to circumvent" another forum's discovery restrictions fails that standard.  *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005); *see also* Charles Alan Wright et al., 8A *Federal Practice & Procedure* § 2044.1 (3d ed.) ("If the limitation on discovery in the collateral litigation would be substantially subverted by allowing access to discovery material under a protective order, the court should be inclined to deny modification.").  Yet that is just what Kiobel is attempting to do here.  *See supra* pp. 46-50.  Kiobel cannot collaterally attack the *Kiobel* confidentiality order through a Section 1782 petition.  The District Court abused its discretion in allowing her to do so.  *Cf. In re Sims*, 534 F.3d at 142 (granting mandamus where a district court's decision "was beyond the permissible limits of discretion").

Stipulated confidentiality orders like those in *Kiobel* and *Wiwa* are a trade-off.  They "serve 'the vital function of securing the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant.' "  *TheStreet.com*, 273 F.3d at 229 (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979)) (ellipses

and brackets omitted).  But the bargained-for price of this efficiency is that the parties cannot use the information they discover in other proceedings.  That requires either a discovery order from the new tribunal, modification of the confidentiality order, or the parties' consent—none of which Kiobel has here.

That raises a final problem with the District Court's decision:  It eliminates Shell's ability to protect its own documents.  Shell was not a party to Kiobel's Section 1782 petition—likely because *Daimler* leaves no doubt that Shell is not subject to personal jurisdiction in the Southern District.  *See supra* pp. 37-38.   The confidentiality order directed by the District Court is between Kiobel and Cravath only.  A236-44.  And that puts both Shell and Cravath in an awkward position.  Shell—the intended defendant in the promised Dutch proceedings—has no power to enforce the District Court's confidentiality order.  And Cravath—the party with the power to enforce the District Court's confidentiality order—will not be a party to the Dutch proceedings.  *See*  A86 (¶ 10).  Even if Cravath could somehow track the Dutch proceedings against Shell, it does not have the same incentives as Shell to do so or to enforce violations of the confidentiality order.

Moreover, the new Kiobel-Cravath confidentiality order is no guarantee that Shell's documents will remain confidential in a Dutch proceeding.  The order directs only that *Kiobel*—whose interests are decidedly adverse to Shell's— "request" confidential treatment.  *See* A241 (¶ 14).  But while documents filed with

Dutch courts are not public, oral arguments and opinions presumptively are. A197 (¶ 11). The District Court thus left Shell's sensitive information "at the mercy of [Dutch] procedures that are unfamiliar to th[e] Court." *Andover Healthcare*, 817 F.3d at 624; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, Nos. 07-5944 SC, CV-12 80 151 MISC, 2012 WL 6878989, at *4 (N.D. Cal. Oct. 22, 2012) ("[T]here is no way to anticipate all of the ways in which [respondent's] confidential documents, which are now protected by an order of this court, could become exposed and not protected in [the foreign proceeding], and might become available for public use in business matters."). The District Court should not have gambled with Shell's confidential information in this way.

## CONCLUSION

For the foregoing reasons, the District Court's order should be reversed and Kiobel's petition denied. In the alternative, the Court should reverse the District Court's order and remand for further proceedings under the correct legal standards.

Respectfully submitted,

/s/ Neal Kumar Katyal

LAUREN A. MOSKOWITZ
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

NEAL KUMAR KATYAL
JESSICA L. ELLSWORTH
SEAN MAROTTA
EUGENE A. SOKOLOFF
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

*Counsel for Respondent-Appellant*

April 13, 2017

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limits of Fed. R. App.

P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App.

P. 32(f), this document contains 12,610 words.

2.     This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word 2010 in 14-point Times New Roman.

/s/ Neal Kumar Katyal
Neal Kumar Katyal

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Clerk using the

appellate CM/ECF system on April 13, 2017. All counsel of record are registered

CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Neal Kumar Katyal
Neal Kumar Katyal